UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLIOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ] | No. 22CR00146 |
| | ] | |
| V. | ] | |
| | ] | |
| MILES COOPERMAN, DEFENDANT | ] | |

DEFENDANT'S RULE FED. R. CRIM. P. 12 MOTION TO DISMISS

Pursuant to Fed. R. Crim. P. 12 Defendant presents this motion to dismiss the indictment in its entirety based on unconstitutionality of 26 U.S. Code § 5861(D), 18 U.S.C.A. § 922 (o)(1), 720 ILCS 5/24-1(a)(7), and 720 ILCS 5/24-1(a)(6) for the reasons set forth below:

A. FACTUAL BASIS

1. Defendant has been indicted for violating 26 U.S. Code § 5861(d) in that he is alleged to have possessed two silencers and a part to a silencer.

2. Defendant was also indicted for violating 18 U.S.C.A. § 922 (o)(1) in that he is alleged to have possessed a part to a machinegun "switch" but not a fully functioning Machine Gun.

3. At the time of the alleged offenses Defendant possessed and, at the time of being released on bail, surrendered to this court, a valid firearms owners identification card and a valid concealed carry card.

4. At the time of the alleged offenses and for a period of close to 30 years Defendant was trained and authorized to use and carry a firearm by the Cook County Sheriff's department.

5. At the time of the alleged Offenses Defendant was not a convicted felon or otherwise disqualified from possessing firearms.

B.  LEGAL BASIS

i.  18 U.S.C.A. § 922(O)(1) AND 720 ILCS 5/24-1(A)(7) VIOLATE THE 2ND AMENDMENT, 5TH AMENDMENT, AND 14TH AMENDMENT OF THE UNITED STATES CONSTUTION

18 U.S.C.A. § 922(O)(1) and 720 ILCS 5/24-1(a)(7) violate the 2nd amendment, 5th amendment, and 14th amendment of the United States Constitution. Recently, The United States Supreme Court set forth the standard of analysis for second amendment claims in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2134 (2022). Specifically, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command. See Id.

18 U.S.C.A. § 922 (o)(1) provides "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C.A. § 922 (o)(1) does not apply with respect to a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or any lawful transfer or lawful possession of a machinegun that was lawfully possessed before 1986. The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term also includes the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. 26 U.S.C.A. § 5845(b) (West).

2

720 ILCS 5/24-1(a)(7) prohibits the possession of any machine-gun, or any combination of parts designed or intended for use in converting any weapon into a Machine Gun, or any combination or parts from which a Machine Gun can be assembled if such parts are in the possession or under the control of a person, in the state of Illinois.

The Defendant is presumed innocent at this time and prior to his arrest was an ordinary, law-abiding, adult citizen—and is part of "the people" whom the Second Amendment protects. The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Defendant is accused of "keeping" or otherwise possessing arms. Defendant is not accused of bearing arms, but again, keeping them. Hence, the Second Amendment's "plain text" covers the Defendants conduct of keeping arms.

Moreover, the Second Amendment protects the keeping and/or carrying of weapons that are "in common use at the time," as opposed to those that "are highly unusual in society at large." New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2143 (2022). At the time of Defendant's arrest, there are a total of approximately 175,977 Machine guns in use by private citizens in the United States. Approximately, 175,977 Machine Guns can be sold or otherwise transferred to other private citizens. [See Exhibit 1 ATF FOIA RESPONSE][1]. Hence, since 2016 175,977 Machine Guns are undeniably "in common use", 175,977 are permitted by law to be sold, transferred, and possessed under the very law challenged, that being 18 U.S.C.A. § 922 (o)(1); 175,977 continue to be in common use, and more than 175,977 have been in common use throughout the history of the United States. It is clear the Second Amendment's "plain text" covers the Defendants conduct of keeping these arms and the burden must shift to the

---

[1] This is a FOIA response from the ATF and the Defendant requests the court to take judicial notice of this

3

government to justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command". <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 142 S. Ct. 2111, 2129–30 (2022).

  Unfortunately, the government in this matter cannot justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation. This is because section 922(o) currently provides that a private citizen can possess and transfer a Machine gun that was registered prior to 1986 and thereby Machine Guns are in common use. Moreover, the keeping of arms was always subject to reasonable regulation, but none of these limitations on the right to keep arms operated to set a cap/limit on how many law-abiding citizens with ordinary self-defense at any given time can keep a certain type of arm for that purpose while prohibiting the remainder of law-abiding citizens with ordinary self-defense needs from keeping such weapons for such purpose. Prior to the enactment of section 922(o) in 1986, a citizen could legally possess a Machine Gun if he/she complied with the relevant registration and tax provisions of the NFA. Prior to 1986 the NFA allowed the manufacture, transfer, or possess a Machine Gun upon registration. Moreover, prior to 1934 there was no regulation of Machine Guns. As a result, this nation's historical tradition of firearm regulation as to Machine Guns was not prohibition or limitation, but rather registration and to this day continues to be registration since registration must occur upon the transfer or sale of any of the 175,977 legal Machine Guns. However, registration of Machine Guns not registered or manufactured after 1986 is no longer allowed and the possession of new Machine Guns is prohibited by Federal law and all Machine Guns, new and old, are prohibited by Illinois. In sum, the historical evidence from America does demonstrate that keeping of arms was subject to reasonable regulation, but none of these

limitations on the right to keep arms operated to allow a maximum cap of 175,977 law-abiding citizens at a time with ordinary self-defense to keep Machine Guns for that purpose while prohibiting the remainder of law-abiding citizens with ordinary self-defense needs from keeping Machine Guns for that purpose. Accordingly, 18 U.S.C.A. § 922 (o)(1) and 720 ILCS 5/24-1(a)(7) violates the second amendment on its face.

Additionally, 18 U.S.C.A. § 922 (o)(1) and 720 ILCS 5/24-1(a)(7) violate the second amendment and due process in that it prohibits persons from possessing new parts or selling new parts to repair the 175,977 machines guns, thereby covering to much innocent conduct. The core individual right of armed defense—as recognized in Heller and incorporated against the states in McDonald—includes a corresponding right to acquire and maintain proficiency in firearm use through target practice at a range. Ezell v. City of Chicago, 846 F.3d 888, 892 (7th Cir. 2017). This also includes a corresponding right to maintenance, service, and repair the firearms kept. Since the term "machinegun" includes the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, it prohibits persons from possessing or manufacturing parts to repair the 175,977 Machine Guns registered before 1986. A person manufacturing or possessing a part for such Machine Guns would be in possession of any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun and **unable to register such item** in violation of 18 U.S.C.A. § 922 (o)(1). Or it can be argued one would not be in violation of the law if he had any part that could fit any one of the 175,977 Machine Gun models that are legal. This is just to ambiguous, overbroad, and encompassing of protected innocent conduct to be historically consistent and not violative of the second amendment.

Moreover, its illogical, arbitrary, and irrational in that repair and maintenance makes weapons safer and the user more proficient and if you're going to ban something for safety purposes you cannot grandfather in the same unsafe contraband. There is no middle ground, either you ban all Machine Guns, or you regulate all Machine Guns. Accordingly, 18 U.S.C.A. § 922 (o)(1) and 720 ILCS 5/24-1(a)(7) violate due process and the second amendment in that the historical evidence from America does demonstrate that keeping of arms was subject to reasonable regulation, but none of these limitations on the right to keep arms operated to prohibit law-abiding citizens with ordinary self-defense needs from repairing and keeping Machine Guns or Machine Gun parts for that purpose and while also allowing 175,977 weapons to be kept by a group of people but prohibiting other law-abiding citizens with ordinary self-defense needs from keeping such Machine Guns for that purpose.

Also, 18 U.S.C.A. § 922 (o)(1) and 720 ILCS 5/24-1(a)(7) violate the second amendment and the due process clause of the 5th amendment. When a case is brought against federal officials, the equal protection clause of the Fourteenth Amendment does not provide the theoretical basis of the claim. Instead, courts turn to the due process clause of the Fifth Amendment. The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Markham v. White, 172 F.3d 486, 491 (7th Cir. 1999). 18 U.S.C.A. § 922 (o)(1) allows for some people to be able to possess Machine Guns while denying other people the right to possess Machine Guns. Currently, a person can only "keep" a Machine Gun which was registered under the NFA prior to 1986. See 18 U.S.C.A. § 922 (o)(1). There are a total of 175,977 Machine guns in existence that were registered prior to 1986. As a result, the total numbers of persons who can keep machines is 175,977 at any given time or one person can keep no more than 175,977 at any

6

given time. This leaves the remainder of the population unable to exercise the right to keep such arms in the same fashion as the 175,977 other private citizens can. Basically, without a constitutionally sufficient basis or reason 175,977 people or one person can have a constitutional right, but the rest of the country cannot. This is a deny of equal protection of the law. This illogical and creates an unequal distribution of the second amendment right to keep arms based on a registration date of the firearm. This creates the potential for one person to have the exclusive second amendment right to possess Machine Guns through the purchase of all 175,977 Machine Guns allowed or 175,977 people to have such right, or any combination thereof. The right to self-defense cannot be monopolized in such a fashion and all constitutional rights must be distributed equally. Moreover, this fictious prohibition on machines guns which allows 175,977 Machine Guns to be stolen from their owners, transferred, sold, and possessed is arbitrary and irrational since the purpose of 18 U.S.C.A. § 922 (o)(1) is to ban Machine Gun possession from private citizens in general but at the same time expressly allows 175,977 random private citizens the sole right to possess, transfer, sell machineguns, which all can be stolen by criminals. Accordingly, 18 U.S.C.A. § 922 (o)(1) and 720 ILCS 5/24-1(a)(7) violate due process as well.

### ii. 26 U.S. CODE § 5861(D) AND 720 ILCS 5/24-1(A)(6) VIOLATE THE SECOND AMENDMENT

26 U.S. Code § 5861(D) and 720 ILCS 5/24-1(a)(6) is also unconstitutional. 26 U.S.C.A. § 5861(d) provides," It shall be unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." The term "firearm" means any silencer (as defined in section 921 of title 18, United States Code. 26 U.S.C.A. § 5845. Failure to register a silencer result in a violation of 26 U.S. Code § 5861(D), If a person complies with the NFA and the GCA, silencer firearm ownership is legal in almost all

7

states. However, it is not legal in Illinois. 720 ILCS 5/24-1(a)(6) prohibits the possession of silencer firearms in Illinois. As a result, there is a complete ban on silencers in Illinois under 720 ILCS 5/24-1(a)(6) and they cannot be registered under 26 U.S. Code § 5861(D). However, since 26 U.S. Code § 5861(D) allows the states to deny the ability to register a silencer pursuant to 720 ILCS 5/24-1(a)(6) both violate the second amendment and Defendant's right to due process.

Applying the New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2143 (2022) we begin with fact that Defendant is presumed innocent of the crimes charged against him was an ordinary, law-abiding, adult citizen—and is part of "the people" whom the Second Amendment protects. The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Defendant is accused of "keeping" or otherwise possessing arms. Defendant is not accused of bearing arms. Hence, the Second Amendment's "plain text" covers the Defendants conduct of keeping arms.

Moreover, the Second Amendment protects the keeping of weapons that are "in common use at the time," as opposed to those that "are highly unusual in society at large. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2143 (2022). Currently silencers are in common use and allowed by the NFA and GCA. According to the ATF the total number of suppressors registered in the United States is 2,664,775 as of May 2021. [https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download Pg 16] [2] The data also shows a 30% increase in their registration and usage. Prior to 1934 Silencers are a type of weapon that was in common use and unregulated. In 1934 the NFA was enacted and to this day simply requires registration of such silencers. A review of history would also show that

---

[2] The court can take judicial notice of government websites and facts within such documents. Defendant requests the court to take judicial notice of these facts.

silencers were used by hunters, sold regularly in hunting magazines and catalogs, and otherwise unregulated. https://www.nrablog.com/articles/2016/10/history-of-suppressors/ President Roosevelt even enjoyed having silencers on his arms. https://www.theodorerooseveltcenter.org/Research/Digital-Library/Record?libID=o206668. Additionally, a very small number of states prohibit silencers with the remainder allowing registration and/or possession. Hence, the Second Amendment's "plain text" covers the Defendants conduct of keeping silencers.

      Unfortunately, the government is unable to justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation. The government in this matter cannot justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation because citizens have never been prohibited from possessing silencers and to this day must simply register them. In fact, 2,664,775 are in common use as of May 202. Hence, the nation's historical tradition of firearm regulation as to silencers was not prohibition but rather registration. But due to the prohibition in Illinois Defendant is unable to register any silencer with the NFA and ATF. Attempting to register would require the Defendant to commit a crime and provide incriminating evidence against himself as to a violation of 720 ILCS 5/24-1(a)(6) to comply with 26 U.S. Code § 5861(D) and the ATF would not register an illegal firearm. Simply put, its impossible for Defendant to register something under 26 U.S. Code § 5861(D) that is prohibited by state law and in violation of the Second Amendment. State lines do not trump the second amendment it is either the NFA allows for every state to have silencer registration, or no state can allow silencers. There cannot be one group of citizens who have more second amendment rights then others solely based on the state they live in when it comes to the types of weapons kept.

Moreover, prosecuting Defendant for a violation of 26 U.S. Code § 5861(D) when he was prohibited from possessing and registering the silencer under 720 ILCS 5/24-1(a)(6) is a violation of due process under these facts. As such, 26 U.S. Code § 5861(D) and 720 ILCS 5/24-1(a)(6) violate the second amendment as applied to the Defendant, on its face, and due process in that is shocking of the conscience and simply unfair, especially since 720 ILCS 5/24-1(a)(6) is a total ban and unconstitutional as explained above.

Wherefore, 18 U.S.C.A. § 922 (o)(1), 26 U.S. Code § 5861(D), 720 ILCS 5/24-1(a)(6), and 720 ILCS 5/24-1(a)(6) violate the constitution the indictment must be dismissed.

By:

/S/ Ilia Usharovich
Ilia Usharovich, Attorney,
224 S. Milwaukee Avenue ST E
Wheeling, Illinois 60090
Telephone: (847)-264-0435
Fax: (224)-223-8079
Email: ilia@usharolaw.com

SHELDON SOROSKY
17 N. Ridge Road
Wilmette, IL 60091
(312) 640-1776
soroskylaw@gmail.com