UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLIOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES | ] No. 22CR00146 |
| | ] |
| V. | ] |
| | ] |
| MILES COOPERMAN, DEFENDANT | ] |

DEFENDANT'S REPLY TO THE GOVERNMENTS RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant presents this Reply to The Government's Response to Defendant's Motion to Dismiss the Indictment.

1. DUE PROCESS AND IMPOSSIBILITY TO COMPLY WITH FEDERAL LAW

The Government asserts:

Defendant also challenges Illinois statutes 720 ILCS 5/24-1(a)(7) and 720 ILCS 5/24/1(a)(6), which prohibit possession of a machine gun and possession of silencer. Dkt. No. 22. Because defendant has not been charged with violating these Illinois statutes, he lacks standing to challenge their constitutionality. [DK 38, Pg. 3]

However, Unlike Article III standing, issues of prudential standing are non-jurisdictional and may be "pretermitted in favor of a straightforward disposition on the merits. United States v. Day, 700 F.3d 713, 721 (4th Cir. 2012), Moreover, the Government seems to confuse the issue. Defendant asserted that prosecuting Defendant for a violation of 26 U.S. Code § 5861(D) when he was prohibited from possessing and registering the machinegun and silencer under §922(o), 720 ILCS 5/24-1(a)(6) and (a)(7) is a violation of due process under these facts. [DK 20 Pg, 5, 6, 7, 8, 10]. However, the Government did not clearly respond to this argument. In United States v. Dalton, 960 F.2d 121 (10th Cir.1992), which involved a conviction under § 5861(d) and (e) for possession and transfer of an unregistered machinegun. A separate criminal statute prohibited the private possession or transfer of any machinegun not lawfully possessed prior to the effective date of the statute. See 18 U.S.C. § 922(o). It was undisputed in Dalton that the government

1

would permit neither the registration of nor the payment of transfer taxes on machineguns covered by § 922(o). See Dalton, 960 F.2d at 122-23. The Tenth Circuit held that Dalton's prosecution under § 5861(d) and (e) violated due process because the NFA punished his failure to register the machinegun when that registration was precluded by law. §922(o), 720 ILCS 5/24-1(a)(7) and 720 ILCS 5/24/1(a)(6) prohibit Defendant from registering a machine gun or silencer. Moreover, Pursuant to federal law, to legally obtain a silencer or a machine gun, the FFL dealer Under Penalties of Perjury, must Declare that the transfer of the described firearm to the transferee and receipt and possession of it by the transferee are not prohibited by the provisions of Title 18, United States Code; Chap 44; Title 26, United States Code; Chap 53; or any provisions of State or local law.[1] Furthermore, to obtain such firearms their must a be form notification of the Defendant's intent to acquire and possess a National Firearms Act (NFA) firearm to the Chief Law Enforcement Officer in Defendant's home City. Because of the prohibitions in 720 ILCS 5/24-1(a)(7) and 720 ILCS 5/24/1(a)(6) there would be a denial in every case by the Government for registration by Defendant in Illinois and Defendant would be unable to comply with Federal law and Illinois Law, making Dalton clearly applicable to Defendant's case.

Sections 5861(d) and (e) punish the failure to register a machinegun while the government refuses to accept the required registration due to the ban imposed by section 922(o), 720 ILCS 5/24-1(a)(7) and 720 ILCS 5/24/1(a)(6). As a result of section 922(o), 720 ILCS 5/24-1(a)(7), and 720 ILCS 5/24/1(a)(6) prohibit compliance with Federal Registration requirements

---

[1] https://www.atf.gov/firearms/docs/form/form-4-application-tax-paid-transfer-and-registration-firearm-atf-form-53204/download A court may take judicial notice of public record information obtained from an official government website. See Ambrosetti v. Oregon Catholic Press, 458 F. Supp. 3d 1013 (N.D. Ind. 2020).

2

making it impossible for Residents of Illinois to own, possess, or register such instruments. Hence, 720 ILCS 5/24-1(a)(7), 720 ILCS 5/24/1(a)(6), section 922(o), 5861(d) and (e) have a symbiotic relationship for purposes of due process and the second amendment. Moreover, 720 ILCS 5/24-1(a)(7) and 720 ILCS 5/24/1(a)(6) create a blanket federal prohibition on possession of all Machine Guns and silencers in Illinois but allows it to occur in other states. This gives standing to Defendant to challenge the state statutes and requires dismissal of the indictment under United States v. Dalton, 960 F.2d 121 (10th Cir.1992) for violations of due process, equal protection, and for violations of the second amendment.

2. POSSESSION OF MACHINE GUNS IS PROTECTED UNDER THE PLAIN TEXT OF THE SECOND AMENDMENT

The Government then asserts that Machine guns are not protected under the Plain text of the second amendment and cites to United States v. Miller, 307 U.S. 174, 178 (1939) [DK 38 Pg. 4]. However, *Miller* was limited to the specific instrument of a "shotgun having a barrel of less than eighteen inches in length". It does not apply to the instrument at issue, that being an Auto/semi-automatic handgun. *Miller* did not apply to machine guns at all. *Miller* held that a right protected by the Second Amendment required "some reasonable relationship to the preservation or efficiency of a well-regulated militia. Applying the *Miller* standard to the case before the court, the possession or use of an automatic/semi-automatic handgun or machine gun has some reasonable relationship to the preservation or efficiency of a well-regulated militia since machine guns and automatic weapons are standard issued instruments in the United States Armed Forces. Also, unlike the short barrel shotgun in *Miller* it is within judicial notice that machine guns are a part of ordinary military equipment and/or that its use could contribute to the

common defense[2]. United States v. Miller, 307 U.S. 174, 178, 59 S. Ct. 816, 818, 83 L. Ed. 1206 (1939). Also, *Miller* limits the type of weapon to which the second amendment right applies to those used by the militia, i.e., those in common use for lawful purposes. See Dist. of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 2786, 171 L. Ed. 2d 637 (2008). This limitation has since been abrogated by the Supreme Court. Rather, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding". New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2132 (2022).

> The Government then cites to *Heller*:
>
> "In other words, under *Heller*, the Second Amendment does not protect those weapons that were "not in common use at the time" of its passage and that were not "typically possessed by law-abiding citizens for lawful purposes." [DK 38, Pg. 4]

However, *Heller* itself held that this very argument that "only those arms in existence in the 18th century are protected by the Second Amendment" is borderline frivolous. See Dist. of Columbia v. Heller, 554 U.S. 570, 582, 128 S. Ct. 2783, 2791, 171 L. Ed. 2d 637 (2008)., "The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding". See Id. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2132 (2022). "Thus, even though the Second Amendment's definition of "arms" is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." See Id.

> The Government next asserts:
>
> "Defendant points to no data to indicate that such weapons were used by private citizens when the Bill of Rights was enacted. Under Miller and Heller, therefore, he has not

---

[2] https://m.goarmy.com/about/army-vehicles-and-equipment/weapons.m.html A court may take judicial notice of public record information obtained from an official government website. See Ambrosetti v. Oregon Catholic Press, 458 F. Supp. 3d 1013 (N.D. Ind. 2020).

4

> demonstrated how the plain text of the Second Amendment covers his possession of machineguns as firearms "in common use at the time" by private citizens." [DK 38 Pg. 5]

However, requiring Defendant to point to data that indicates that such weapons were used by private citizens when the Bill of Rights was enacted is inconsistent with *Heller's* clear statement that the Second Amendment "extends ... to ... arms ... that were not in existence at the time of the founding. Caetano v. Massachusetts, 577 U.S. 411, 412, 136 S. Ct. 1027, 1028, 194 L. Ed. 2d 99 (2016). New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2132 (2022). The proper test is whether the instrument is "in common use" today for self-defense not when the Bill of Rights was enacted. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2119 (2022). Moreover, because there is a prima face presumption that the Second Amendment applies "to all instruments that constitute bearable arms" it is not the Defendant's burden to present any data, rather the State has the burden of rebutting this presumption Sibley v. Watches, 460 F. Supp. 3d 302, 321 (W.D.N.Y. 2020). To do so, the State must show, at a minimum, that the weapon in question is "not typically possessed by law-abiding citizens for lawful purposes"; it is not enough to simply show that the weapon is not in "common use. Sibley v. Watches, 460 F. Supp. 3d 302, 321 (W.D.N.Y. 2020). To measure whether a weapon is dangerous and unusual, the court looks at whether it is "in common use," or whether such weapons are "typically possessed by law-abiding citizens for lawful purposes." Fyock v. City of Sunnyvale, 25 F. Supp. 3d 1267, 1275 (N.D. Cal. 2014), aff'd sub nom. Fyock v. Sunnyvale, 779 F.3d 991 (9th Cir. 2015). "Common Use" is an objective and largely statistical inquiry, typical possession requires the court to look into both broad patterns of use and the subjective motives of gun owners. Sibley v. Watches, 460 F. Supp. 3d 302, 321 (W.D.N.Y. 2020). The Supreme Court did not define the common use test as a local test, but rather

evaluated common use as a national test in its historical discussion. See Heller, 554 U.S. at 621–28, 128 S.Ct. 2783. Moreover, it cannot be that common use is measured on anything but a national scale—otherwise, the scope of individuals' Second Amendment rights as enshrined in the federal Constitution would vary based on location. This result would be wrong: the Second Amendment safeguards individual rights **equally throughout the United States**. Fyock v. City of Sunnyvale, 25 F. Supp. 3d 1267, 1275–76 (N.D. Cal. 2014), aff'd sub nom. Fyock v. Sunnyvale, 779 F.3d 991 (9th Cir. 2015).

Upon review of the Government's response the Government has failed to meet its burden and rebut the presumption, nor could they. According to the ATF report provided by Defendant and the court in *Hollis* 175,977 machine guns can be and have been sold to private citizens, who may lawfully possess them in 38 states throughout the country. The government has not submitted any evidence to the contrary nor can they. A more recent ATF report has placed the number of total registered machine guns state by state throughout the country at 741,146. [See Exhibit 2 Pg 15-17]. Furthermore, the Government's statistical inquiry comparing the use and purchase of 50 million large-capacity magazines and 8 million AR-15's is illogical since such items are not subject to a federal ban, like machine guns and automatic handguns are. Measuring 'common use' by the sheer number of weapons lawfully owned is somewhat illogical. O'Neil v. Neronha, CV 19-612 WES, 2022 WL 782547, at *6 (D.R.I. Mar. 15, 2022) Worman, 922 F.3d at 35 n.5 (quoting Friedman, 784 F.3d at 409) ("[I]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so it isn't commonly owned."). Concurring in <u>Caetano v. Massachusetts</u>, Justice Alito, joined by Justice Thomas, rejected a similar line of reasoning. See 577 U.S. 411, 420, 136 S.Ct. 1027, 194 L.Ed.2d 99 (2016) (Alito, J., concurring). Justice Alito wrote that the statistical gap between the number of

stun guns or Tasers and firearms "may be true, but it is beside the point." Id. This is because if it were "[o]otherwise, a State would be free to ban all weapons except handguns, because 'handguns are the most popular weapon chosen by Americans for self-defense in the home.'" Id. (quoting Heller, 554 U.S. at 629, 128 S.Ct. 2783). Justice Alito went on to say that "[t]he more relevant statistic is that '[h]undreds of thousands of Tasers and stun guns have been sold to private citizens,' who it appears my lawfully possess them in 45 states." Id. (quoting People v. Yanna, 297 Mich.App. 137, 824 N.W.2d 241, 245 (2012)). O'Neil v. Neronha, CV 19-612 WES, 2022 WL 782547, at *6 (D.R.I. Mar. 15, 2022)

  Hence, 175,977 instruments with a ban on such items since 1986 is sufficient in units to be considered common use, especially with 38 states allowing such instruments. At least as one other court has found the "common use" requirement is satisfied with 64,890 sales of an instrument covered by the Second Amendment. Maloney, 351 F.Supp.3d at 237-38 (finding same as to metal and wood nunchakus where at least 64,890 were sold to private citizens and finding 175,977 machine guns). Moreover, Machine guns are registered in all the States and other American Territories. [See Exhibit 2 Pgs. 15-17]. Only 175,977 pre-1986 civilian-owned machine guns are in existence, 741,146 are registered in all fifty states, but only 12 states out of 50 entirely banned machine guns. The remainder of the 38 states allow for machine guns. See Hollis v. Lynch, 827 F.3d 436 (5th Cir. 2016) (finding 175,977 such instruments and 38 states allow for machine guns). So, we have over a hundred thousand machine guns which have been sold to private citizens and who may lawfully possess them in 38 states and close to 1 million registered in all 50 states. There is no question machine guns are in common use.

  Furthermore, the government has failed to show that this type of instruments is not typically possessed by law-abiding citizens for lawful purposes, nor can they. The Government

7

cannot claim that these types of instruments are not in common use and not typically possessed by law-abiding citizens for lawful purposes since Section 922(o) creates and allows for the typical and common possession and use of such weapons for self-defense since it carves out an exception for any lawful transfer or possession of a machinegun that was lawfully possessed before the statute's enactment. This exception places 175,977 machine guns in common use for self-defense purposes throughout the country with no safety-based criteria on the possession of these 175,977 machine guns. As a result, the law itself allows the common use of the instrument for self-defense purposes but limits the number of instruments allowed to be used to no more than 175,977 registered instruments. No such historical regulation of analogues regulation exists. Accordingly, the Government has failed to meet its burden since there has been no meaningful contrary evidentiary showing by the State, which ultimately "bears the burden of rebutting the 'prima facie presumption of Second Amendment protection' that extends to all bearable arms. Avitabile v. Beach, 368 F. Supp. 3d 404, 412 (N.D.N.Y. 2019) See also Maloney v. Singas, 351 F. Supp. 3d 222, 235 (E.D.N.Y. 2018).

      The Government also cites to Kolbe v. Hogan, 849 F.3d 114 (4th Cir. 2017), Hollis v. Lynch, 827 F.3d 436, 447 (5th Cir. 2016), Hamblen v. United States, 591 F.3d 471, 474 (6th Cir. 2009), United States v. Fincher, 538 F.3d 868, 874 (8th Cir. 2008), United States v. Henry, 688 F.3d 637, 640 (9th Cir. 2012). [DK 38 Pg. 6] However, Kolbe was expressly abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022). The remaining cases cited by the Government did not concern the application of Federal Grandfather bans such as the one at issue, nor did the Supreme Court in Heller or Miller. These cases applied the wrong standards under the Second Amendment by applying a Means-end scrutiny, such as strict or intermediate scrutiny, which does not apply in the Second Amendment context. See Id.

Moreover, these cases did not apply the "common use" test properly as set forth above by the Defendant. For example, *Hollis* found there is no prima facie case, though, when the weapon is not one "in common use at the time," "possessed at home," and for "lawful purposes like self-defense." Hollis further held, a firearm is not "in common use" if it is "dangerous and unusual. This is incorrect in that there is no standard that the weapon must be possessed at home. The State must show, at a minimum, that the weapon in question is "not typically possessed by law-abiding citizens for lawful purposes"; it is not enough to simply show that the weapon is not in "common use. To measure whether a weapon is dangerous and unusual, the court looks at whether it is "in common use," or whether such weapons are "typically possessed by law-abiding citizens for lawful purposes." Fyock v. City of Sunnyvale, 25 F. Supp. 3d 1267, 1275 (N.D. Cal. 2014), aff'd sub nom. Fyock v. Sunnyvale, 779 F.3d 991 (9th Cir. 2015) Additionally, these cases all considered flat out banning machine guns in the form of M-16 and automatic assault rifles not automatic/semiautomatic handguns or the quota of machine guns. Hollins even held the individual right protected by the Second Amendment applies only to weapons that are possessed at home and are in common use at the time for lawful purposes like self-defense, though that category at times may overlap with category of weapons that are useful in the militia or military. This line of logic was abrogated by the Supreme Court. Regardless, as explained above both automatic/semi-automatic handguns and machine guns are weapons "in common use" today for self-defense. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2119 (2022).

9

3. PROHIBITING THE POSSESSION OF MACHINEGUNS IS INCONSISTENT WITH THE NATION'S HISTORICAL TRADITION OF FIREARM REGULATION.

The Government then asserts

Section 922(o) still does not violate the Second Amendment because the statute "is consistent with this Nation's historical tradition of firearm regulation." The "straightforward historical inquiry" that Bruen described suffices to meet their burden. In light of Heller's conclusion that our nation's historical tradition includes regulating dangerous and unusual firearms—a conclusion rooted in a variety of historical resources wholly unrefuted by defendant—this Court should reject defendant's constitutional challenge to Section 922(o) on historical grounds. [DK 38 Pg. 7-8]

However, the burden falls on the Government to show that ban is consistent with this Nation's historical tradition of firearm regulation, not the Defendant. Bruen, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2119 (2022). This Court cannot conclude from the historical record presented by the Government, by the time of the founding, English law would have justified such a grandfather restriction allowing 175,977 people to possess the exclusive right to have an automatic/semi-automatic handgun for self-defense or a machine gun but prohibit the remainder of individuals in the country from possessing this very same instrument for self-defense. The Second Amendment safeguards individual rights equally throughout the United States. Fyock v. City of Sunnyvale, 25 F. Supp. 3d 1267, 1275–76 (N.D. Cal. 2014), aff'd sub nom. Fyock v. Sunnyvale, 779 F.3d 991 (9th Cir. 2015). None of the evidence or history presented by the Government regulated weapons similarly or even close to the law at issue. The laws and regulations presented by the government entirely banned the possession of all dangerous and unusual weapons. It did not set an arbitrary quota or exceptions. The restriction before the court is a "grandfather ban "which prohibits possession of machine guns but carves out an exception for possession and use of such machine guns solely based on the date of the legislation being enacted, grand fathering in such weapons with no safety criteria, or other legal prohibitions such as felons, mentally ill, etc. For

10

example, the government cites "under English common law, "the offense of riding or going armed, with dangerous or usual weapons, [was] a crime.". The regulation did not carve out an exception for 175,977 people to ride or go armed with dangerous or unusual weapons and not allow the rest. Rather the law says no one can ride or go armed with dangerous or unusual weapons, without exception. The historical legislation also did not create exclusive rights for some citizens and not others who are similarly situated. The Government cannot legislate that 175,977 instruments are not dangerous and unusual, can be possessed, and used for self-defense but any number above 175,977 of the very same instruments are dangerous and unusual and cannot be possessed. This grants an exclusive right of self-defense with an instrument to 175,977 people or just one who purchases all the instruments. Here, the Government has not met their burden to identify an American tradition justifying the ban on some machine guns but not all machine guns. American governments simply have not allocated second amendment rights in quotas or limits in relation to the type of instruments for personal defense. Accordingly, the restrictions are unconstitutional, and the indictment must be dismissed.

Moreover, because of the prohibitions in 720 ILCS 5/24-1(a)(7) and 720 ILCS 5/24/1(a)(6) Section 922(o) as applied and on its face operate as a complete ban on those persons living in the state of Illinois from registering and possessing machine guns but allows other persons in other states the exclusive right to possess machine guns and silencers, it further violated the second amendment. American governments simply have not allocated second amendment rights in such fashion or limits in relation to the type of instruments for personal defense. The Second Amendment safeguards individual rights **equally throughout the United States**. Accordingly, 720 ILCS 5/24-1(a)(7), 720 ILCS 5/24/1(a)(6), Section 922(o), and 26 U.S. Code § 5861(D) is unconstitutional, and the indictment must be dismissed

11

4. THE REGULATION OF AN INDIVIDUAL'S POSSESSION OF A SILENCER DOES VIOLATE THE SECOND AMENDMENT

The Government next asserts:

"Federal law's regulation of the possession of silencers does not violate the Second Amendment on several grounds. First, silencers are not "arms" withing the meaning of the Second Amendment." [DK Pg. 11]

However, this admission makes 26 U.S.C. § 5845(a) and every other definition which includes silencers as firearms wholly arbitrary or irrational in purpose or means and thereby violative of due process. See Miller v. City of Chicago, 774 F.2d 188, 195 (7th Cir. 1985). This is because if silencers are not arms under the second amendment, then they need not be registered or regulated by the NFA as firearms, making the law irrational in purpose or means and otherwise arbitrary. Moreover, the punishment becomes too disproportionate under the 8th amendment when the contraband is treated as a firearm for sentencing and guideline purposes, but it is not an actual firearm for second amendment purposes.

Furthermore, the government is estopped from asserting that silencers are not firearms under the second amendment because under the NFA, a silencer is defined as a "firearm" under 26 U.S.C. § 5845(a), the Government treats silencers as firearms for sentencing purposes, and otherwise continues to refer to them as firearms throughout their response. Hence, a silencer is as a "firearm" or "arm under the second amendment. A silencer is a modern instrument that facilitates armed self-defense by protecting the user's hearing system from the damaging sounds of discharge in self-defense situations, especially inside the home or closed quarters. Moreover, since the protection under the second amendment extends to accessories for firearms which help facilitate self-defense such as high-capacity magazines and shooting ranges in Ezell v. City of Chicago, 651 F.3d 684, 704 (7th Cir. 2011) it must also logically extend to silencers. The Government presented no evidence that silencers are not instruments typically possessed by law-

abiding citizens for lawful purposes in "common use". However, Defendant presented evidence that according to the ATF the total number of suppressors registered in the United States is 2,664,775 as of May 2021. *[https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download Pg 16]*. Additionally, a very small number of states prohibit silencers with the remainder allowing registration and/or possession. Hence, the Government failed to meet its burden and show, at a minimum, that the weapon in question is "not typically possessed by law-abiding citizens for lawful purposes"; and is not in "common use. Sibley v. Watches, 460 F. Supp. 3d 302, 321 (W.D.N.Y. 2020).

The government next asserts that

"Even assuming that silencers are "arms" within the meaning of the Second Amendment, the NFA's restrictions on silencers are well in line with two historical traditions in this country: first, the already discussed historical tradition of regulating "dangerous and unusual weapons" and, second, the historical tradition of regulating commerce in firearms." [DK 38, Pg. 12]

However, a silencer is not a dangerous and unusual weapon. As explained above, it is in common use. A silencer is not necessary to make a firearm operable; rather, it is exclusively a means to reduce sound omitted from an already operable firearm. A silencer is a firearm accessory; it's not a weapon in itself. See Cox, 906 F.3d 1170, 1186 (10th Cir. 2018); Hasson, 2019 WL 4573424, at *3-5 (D. MD. Sept. 20, 2019), aff'd, 26 F.4th 610. Accordingly, a silencer is not a dangerous and unusual weapon, it is in common use, and typically possessed by law-abiding citizens for lawful purposes.

Additionally, the practice of the colonies and the United States of regulating commerce in firearms does not show that the historic traditions regulated accessories to firearms or required them to be registered. Rather, the commerce regulations dealt solely with the actual gun that discharges the ammunition and the ammunition itself, not the accessories to the gun. Silencers are not ammunition and are not the gun. Silencers have never been subject to longstanding

13

restrictions and a historic analysis fails to persuade that silencers otherwise fall outside constitutional protections.

Moreover, the prohibitions in 720 ILCS 5/24-1(a)(7) and 720 ILCS 5/24/1(a)(6) and the requirement of federal registration as to silencers and machine guns as applied to Defendant and on its face operates as a complete ban on those persons living in the state of Illinois or any other state which prohibits such items from registering and possessing silencers but allow other persons in other states the exclusive right to register and possess silencers. American governments simply have not allocated second amendment rights in such fashion or limits in relation to the type of instruments for personal defense. The Second Amendment safeguards individual rights **equally throughout the United States**. Accordingly, prosecuting Defendant for failing to register when he was prohibited from possessing and registering the silencer under 720 ILCS 5/24-1(a)(6) and (a)(7) is a violation of due process and the second amendment under these facts. The restrictions violate the second amendment, on its face, and due process in that is shocking of the conscience and simply unfair, especially since 720 ILCS 5/24-1(a)(6) is a total ban, unconstitutional, and violative of the holding in United States v. Dalton, 960 F.2d 121 (10th Cir.1992)

5. WAIVER BY THE GOVERNMENT

It is well established that failure to respond to an argument result in a waiver of that argument. See Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir.2010). The Defendant asserted that 18 U.S.C.A. § 922 (o)(1) and 720 ILCS 5/24-1(a)(7) violate the second amendment and due process in that it prohibits persons from possessing new parts or selling new parts to repair the 175,977 machines guns, thereby covering to much innocent conduct. [DK 22, Pg. 5-6] The Government failed to respond to this argument. Defendant also raised the issue of Also, 18

14

U.S.C.A. § 922 (o)(1) and 720 ILCS 5/24-1(a)(7) violate the second amendment and the due process clause of the 5th amendment. [DK 22 Pg. 6] The Government failed to respond to this argument as well. Defendant raised the argument that Moreover, prosecuting Defendant for a violation of 26 U.S. Code § 5861(D) when he was prohibited from possessing and registering the weapons under 720 ILCS 5/24-1(a)(6) and 720 ILCS 5/24-1(a)(7) result in violation of due process under these facts. [DK 22, Pg. 10, 5, 6, 7, 8]. The Government failed to respond to this argument as well. As a result, the Government has waived and otherwise forfeited any arguments in response to these arguments.

6. CONCLUSION

Accordingly, for the reasons set forth in the Defendant's motion, the Government's response, and the Defendant's reply, the indictment must be dismissed pursuant to Dalton, 960 F.2d 121 (10th Cir.1992). Moreover, 18 U.S.C.A. § 922 (o)(1), 26 U.S. Code § 5861(D), 720 ILCS 5/24-1(a)(6), 720 ILCS 5/24-1(a)(7), 26 U.S.C. § 5845(a) violate the constitution and the indictment must be dismissed for such reasons as well.

By:

/S/ Ilia Usharovich
Ilia Usharovich, Attorney,
224 S. Milwaukee Avenue Suite
G Wheeling, Illinois 60090
Telephone: (847)-264-0435
Email:ilia@usharolaw.com

Sheldon Sorosky
Attorney For Plaintiff
717 N Ridge Road
Wilmette, Illinois 60091
312-404-2600
Email:soroskylaw@gmail.com