UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Case No. 22-CR-00146 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| MILES COOPERMAN, | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

On March 16, 2022, Defendant Miles Cooperman ("Cooperman") was indicted on two counts: possession of two silencers and a part designed to assemble a silencer in violation of 26 U.S.C. § 5861(d) and possession of two glock conversion devices in violation of 18 U.S.C. § 922(o). Cooperman now moves to suppress statements made to ATF agents and to suppress evidence of the two silencers, the part to the silencer, and the glock conversion devices. For the following reasons, this Court denies Cooperman's motion [23].

**Background**

The following facts are undisputed by the parties. In April 2018, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began to investigate SILENCER-SALE.com, a website from which individuals can purchase firearm related equipment. A magistrate judge issued the ATF a search warrant to search this website and its related PayPal account. Through their search, ATF agents learned the date of birth, addresses, and financial records of various customers. After searching law enforcement databases, ATF agents discovered that information on Cooperman's driver's license matched information associated with a SILENCER-SALE.com account that had made a November 2017 purchase of two glock switches and three silencer and silencer components.

1

Around a year later, on April 12, 2019, Cooperman, a deputy sheriff for the Cook County Sheriff's office, left his house and entered a car parked in his driveway. He was in his Cook County Sheriff's uniform and was armed. Upon spotting Cooperman, two ATF agents, who were also armed and sitting in an unmarked truck outside Cooperman's property, activated their emergency lights and pulled into Cooperman's driveway. The ATF agent's vehicle blocked Cooperman's vehicle in the driveway such that Cooperman could not drive away without crossing the grass. Cooperman exited his car and began to speak with the agents, who identified themselves as law enforcement. The ATF agents did not have a search or an arrest warrant for Cooperman, nor did the agents give Cooperman his *Miranda* rights.

The agents asked Cooperman if he knew of the website "SILENCER-SALE.com." Cooperman responded affirmatively. The agents then asked if Cooperman had ordered silencers and glock switches, and Cooperman confirmed that he purchased these items. When the agents asked if he still had these items in his possession, Cooperman explained they were inside the house. The agents inquired as to whether the items were registered and Cooperman confirmed that he did not have a stamp for these items. The agents then asked if Cooperman would retrieve the items and surrender them to the ATF. Cooperman entered his house, unaccompanied but still armed, and returned with two glock switches and two silencers approximately ten minutes later. When the agents asked about the third silencer, Cooperman responded that the silencer was in Wisconsin. Four days later, Cooperman drove to the ATF field office where he provided the ATF with the third silencer.

**Discussion**

Cooperman maintains that the ATF agents unlawfully seized him in his driveway, and that the Fourth and Fifth Amendments prohibit the admission of statements and evidence procured from this unlawful stop. For the reasons discussed below, the Court denies Cooperman's motion.

2

*Evidentiary Hearing*

As an initial matter, Cooperman requests in his reply brief that this Court hold an evidentiary hearing. Evidentiary hearings are necessary when there is a "disputed issue[] of material fact that will affect the outcome of the motion." *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018) (internal citation omitted). Although Cooperman identified disputed questions of fact in his reply brief and during oral argument, the Court determines that none of the disputed questions affect the outcome of the present dispute. The Court declines to hold an evidentiary hearing and instead addresses the following arguments based on the undisputed facts.

*Suppression under the Fourth Amendment*

Cooperman contends that the Court should suppress evidence of the two silencers, the part to the silencer, and the glock selector switches, as well as statements he provided to law enforcement, because they were produced in response to an unlawful seizure. Therefore, this Court must determine whether Cooperman was seized, and if so, whether the seizure was justifiable on other grounds, such as reasonable suspicion. *See United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015) (considering whether an individual was seized and then whether the officers had reasonable suspicion to conduct the stop).

"A person has been seized within the meaning of the Fourth Amendment … if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Ahmad*, 21 F.4th 475, 478–79 (7th Cir. 2021) (internal citations and alterations omitted). A seizure can result from "submission to [a law enforcement officer's] assertion of authority." *United States v. Jones*, 22 F.4th 667, 673 (7th Cir. 2022) (internal citation omitted). When assessing a seizure, courts consider:

> the totality of the circumstances, including where the interaction took place, how many officers were present, the extent to which the police presence was threatening, whether the officers made any show of weapons or physical force, the officers'

3

>   language and tone, whether the officers suggested that the defendant was suspected
>   of a crime, and whether the officers told the defendant he was free to leave.

*Id.* The reasonable person standard is "objective" and does not change depending on the defendant's subjective characteristics or viewpoint. *Ahmad*, 21 F.4th at 479.

Based on the undisputed facts, the Court finds that Cooperman was seized. The parties agree that Cooperman had entered his vehicle parked in his driveway when the two ATF agents pulled in front of him, activating their emergency lights and blocking in his car. By pulling into Cooperman's driveway in this manner, the ATF agents obstructed Cooperman's only plausible avenue out of the driveway (beyond, as the government conceded in oral argument, pulling out over the grass). The officers' action would cause a reasonable individual to believe they are not free to leave. *See, e.g., United States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006) (citing cases suggesting that officers' actions to block a car can make an individual feel they are not free to leave); *United States v. Green*, 111 F.3d 515, 520 n.1 (7th Cir. 1997) (finding that when police pulled in behind a car, blocking their exit from the drive way, "a reasonable person would not feel that he was free to leave"). This conclusion is further supported by the officers' decision to "[a]ctivat[e] their emergency lights" which "unquestionably qualif[ies] as a show of authority." *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011). Although the government does not appear to have directed Cooperman to leave his car, Cooperman submitted to their authority by leaving his car and speaking to them. Together, these facts indicate that Cooperman was seized.[1]

---

[1] During oral argument, the parties highlighted the fact that Cooperman was armed and discussed whether this should impact the seizure analysis. In this instance, the Court does not find that the presence of a gun, for either party, impacts whether Cooperman was seized, particularly given that there is no evidence that either party removed the gun from their holsters. But the Court wishes to emphasize the unique circumstances present in this case. Had Cooperman not been an officer, the Court predicts that this encounter would have come out very differently. Indeed, the fact that officers allowed Cooperman to maintain his weapon and enter a house unaccompanied in any circumstance shocks the Court.

Because the Court finds Cooperman was seized, it next considers whether the seizure was lawful under the Fourth Amendment. The government contends that their past investigation gave them reasonable suspicion to conduct the investigatory stop. It is well established that police officers have constitutional authority to conduct investigatory stops without a warrant when they have a reasonable suspicion of criminal activity, supported by articulable facts. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *United States v. Street*, 917 F.3d 586, 593 (7th Cir. 2019) (citation omitted). Reasonable suspicion is "a particularized and objective basis for suspecting" that the stopped person has broken the law. *Shields*, 789 F.3d at 745 (citation omitted). After a court determines that an investigatory stop was supported by reasonable suspicion, the court must consider whether the seizure "was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Glenna*, 878 F.2d 967, 971 (7th Cir. 1989). To succeed against a motion to suppress, the government must establish reasonable suspicion for a *Terry* stop by a preponderance of the evidence. *See United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013).

Cooperman maintains that the agents lacked reasonable suspicion to seize him because the information they relied upon to conduct the stop had grown stale. Although the government has not explained the year-long delay between the issuance of the search warrant and the stop, the Court finds that the government's investigation provided sufficient objective facts to conduct this investigative stop. The ATF agents investigated the SILENCER-SALE.com website, discovered information about a purchase of firearm related equipment, and connected this purchase with Cooperman. This investigation thus provided a particularized basis for the agents to believe that Cooperman possessed these items, even a year later.

Cooperman's staleness arguments are unavailing. Cooperman generally argues that the lapse of time between the investigation and the stop made the information grow stale. To assess

Cooperman's argument, this Court finds the Seventh Circuit's assessment of staleness in the context of warrantless arrests instructive. In *United Sates v. Haldorson*, the Circuit noted "[i]t is the rare case where 'staleness' will be relevant to the legality of a warrantless arrest. When there is a reasonable belief that someone has committed a crime, time by itself does not make the existence of that fact any less probable." 941 F.3d 284, 292 (7th Cir. 2019). In this case, the government had reasonable suspicion that Cooperman made these purchases and conducted an investigatory stop on that basis. Cooperman has not pointed to any evidence in the intervening year making possession of the equipment less probable. *See id.* ("There could be circumstances in which the subsequent investigation turns up new facts or evidence that disprove or discredit the original information."). And this Circuit has suggested that, for firearm offenses, the passage of time does not necessarily make evidence stale. *See, e.g., United States v. Hix*, 650 F.3d 1058, 1068 (7th Cir. 2011) ("[D]epending on the circumstances, evidence of the sighting of a gun (or related items) does not automatically grow stale as time passes").

Cooperman cites to *United States v. Marriott*, which, in discussing the basis for a search warrant, highlighted how "a gun silencer is not perishable and is not typically resold," but how a defendant could have gotten rid of the silencer in the intervening time between the date of purchase and the search, such that the silencer was no longer in the defendant's possession. 638 F. Supp. 333, 335 (N.D. Ill. 1986).[2] Indeed, Cooperman could have gotten rid of the equipment in the intervening months. But Cooperman does not explain why this theoretical possibility undermines the government's articulated basis for this *investigatory* stop. *Marriott* involved a search warrant, which must be supported by probable cause. *Id.* No search was executed here, and reasonable suspicion is

---

[2] The Court notes that Cooperman did not cite *Marriott* for this proposition, but instead claimed *Marriott* held that "a gun silencer is perishable and typically resold when more than one is purchased at a time," mischaracterizing the case. Cooperman also used a verbatim string cite from *Hix* (without citing *Hix* itself) as support for why the sixteen-month lapse of time indicates staleness. But this string cite does more to hurt, than help, Cooperman's argument.

6

a lower threshold than probable cause. *See Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. E. 2d 301 (1990) ("Reasonable suspicion is a less demanding standard than probable cause."). This Court questions why the government waited so long to initiate this stop and is concerned about the potential misuse of investigatory information as a basis for stops that occur much later in time. Nonetheless, the Court finds that the government had reasonable suspicion to seize Cooperman and ask about the SILENCER-SALE.com purchases.

The Court also determines that this seizure was lawful because it "was reasonably related in scope to the circumstances which justified the interference in the first place." *Glenna*, 878 F.2d at 971. Cooperman argues that the stop ripened into a de facto arrest, which, in his view, provides additional support for suppressing the evidence. "A *Terry* stop based on reasonable suspicion can ripen into a de facto arrest that must be based on probable cause if it continues too long or becomes unreasonably intrusive." *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011) (internal citation omitted). The facts here do not amount to a de facto arrest. Indeed, it is disputed whether Cooperman was told the interview was voluntary or that he was not under arrest. But the undisputed facts suggest that the agents and Cooperman engaged in a cooperative encounter, without force or restraint on Cooperman's freedom of movement. The conversation itself appears to have been short, where the agents only asked Cooperman a few questions. No one drew their weapons and Cooperman was permitted to go inside his home, alone, and soon returned with the equipment. The Court finds that this conduct is not akin to a de facto arrest. Because this seizure was supported by reasonable suspicion and the investigatory stop itself was reasonable, the seizure was lawful. Cooperman's motion to suppress evidence and statements based on a Fourth Amendment violation is denied.

*Suppression Under the Fifth Amendment*

Cooperman further argues that his statements and evidence must be suppressed under the Fifth Amendment because he was questioned without receiving his *Miranda* rights. The *Miranda* requirement is only triggered when a defendant is in custody and subject to interrogation. *See United States v. Leal*, 1 F.4th 545, 549 (7th Cir. 2021). "To establish that he was in custody at the time of questioning, a defendant must show that he was either formally arrested or subjected to restraints of freedom such that the conditions of a formal arrest were closely approximated or actually attained." *Id.* (internal citations omitted). Like the Fourth Amendment analysis assessed above, this inquiry is "objective" and courts should consider "the location of the questioning; its duration; statements made during the interview; the presence or absence of physical restraints during the questioning; and the release of the interviewee at the end of the questioning." *Id.*

In arguing that Cooperman was "seized" and placed under de facto arrest, Cooperman conflates the requirements for a seizure with "custody" under *Miranda*. *See, e.g., Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) (discussing the distinction between seizures, such as *Terry* stops, and custodial interrogation "subject to the dictates of Miranda"); *United States v. Smith*, 3 F.3d 1088, 1096 (7th Cir. 1993) ("[O]ur inquiry into the circumstances of temporary detention for a Fifth and Sixth Amendment *Miranda* analysis requires a different focus than that for a Fourth Amendment *Terry* stop."). Therefore, simply because Cooperman was seized does not mean that he was in "custody." Rather, as discussed above, the undisputed facts do not amount to an arrest nor show that Cooperman was in "custody" for the purposes of *Miranda*. The questioning occurred outside, was short-lived, and Cooperman was able to freely walk away. Therefore, this Court finds that Cooperman was not in custody and that the Fifth Amendment does not require suppression of his statements.

8

Lastly, Cooperman contends that officers' conduct violated Illinois state law. *See* 725 ILCS 5/107-7 ("Judges, attorneys, clerks, sheriffs, and other court officers shall be privileged from arrest while attending court and while going to and returning from court."). Because Cooperman was not arrested, 725 ILCS 5/107-7 is irrelevant.

For the foregoing reasons, Cooperman's motion to suppress statements and evidence is denied [23].

IT IS SO ORDERED.

Date: 1/26/2023

Entered:

_____
SHARON JOHNSON COLEMAN
United States District Judge