UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-CR-146 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| MILES COOPERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On March 16, 2022, a grand jury indicted Defendant Miles Cooperman ("Cooperman") for possession of an unregistered firearm under 26 U.S.C. § 5861(d) and possession of a machinegun under 18 U.S.C. § 922(o). Cooperman moves to dismiss the indictment, challenging the constitutionality of the regulations under the Second Amendment and the Due Process Clause. The Court denies Cooperman's motion [22] for the following reasons.

**Background**

The Court presumes familiarity with the facts as summarized in this Court's Memorandum Opinion and Order issued January 26, 2023 denying Cooperman's motion to suppress statements and evidence. (Dkt. 57.) As is relevant here, in July 2018, ATF agents discovered information indicating that Cooperman, a deputy sheriff for the Cook County Sheriff's office, purchased two Glock switches and three silencers from a website selling various firearm-related products. In April 2019, ATF agents went to Cooperman's residence and asked whether the items were inside the house. Cooperman retrieved two Glock switches and two silencers from the residence and turned them over to the ATF agents. Four days later, he turned over the third silencer, which he retrieved from a cabin in Wisconsin.

**Discussion**

Cooperman moves to dismiss his indictment, arguing that the federal statutes under which he is charged are unconstitutional under the Second Amendment as established in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). In *Bruen*, the Supreme Court modified the test used to determine whether a regulation is constitutional under the Second Amendment. First, the Court must assess whether the "plain text" of the Second Amendment covers the regulated conduct. *Bruen*, 142 S. Ct. at 2126 ("[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."). If so, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. This analysis poses "neither a regulatory straightjacket nor a regulatory blank check." *Id.* at 2133. Because the regulations withstand *Bruen's* analysis, Cooperman's Second Amendment challenge fails.

<u>Constitutionality of Silencer Regulations under the Second Amendment</u>

Cooperman challenges the constitutionality of 26 U.S.C. § 5861(d), which bars the possession of unregistered silencers. A silencer is defined by federal statute as a device used for "silencing, muffling, or diminishing the report of a portable firearm." 18 U.S.C. § 921(a)(25).

The plain text of the Second Amendment does not protect accessories that are not bearable arms, such as silencers. The Supreme Court has held that the scope of the Second Amendment's text "extends to all instruments that constitute bearable arms." *D.C. v. Heller*, 554 U.S. 570, 582, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Although the Supreme Court and the Seventh Circuit have not specifically addressed whether silencers constitute bearable arms, the Tenth Circuit, in a pre-*Bruen* decision, offered a persuasive explanation of why they do not. *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2690 (2019). In *Cox*, owners of an army surplus store challenged the constitutionality of the National Firearms Act ("NFA"), arguing that the

regulation of silencers infringed on their Second Amendment rights. *Id.* at 1175–77. The Tenth Circuit rejected the owners' argument, holding that silencers are firearm accessories, not weapons, under *Heller*'s definition of bearable arms and therefore do not fall under the protection of the Second Amendment. *Id.* at 1186 (citing *Heller*, 554 U.S. at 581–82) (defining "bearable arms" according to early American dictionary definitions as "weapons of offence, or armour of defence" and "any thing that a man wears for his defence, or takes into his hands, or useth to cast at or strike another"). The Court finds the reasoning in *Cox* persuasive—as a firearm accessory, silencers are not weapons and therefore cannot be "bearable arms" protected by the Second Amendment.

Further, Cooperman's argument that *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) extends to silencers falls flat. In *Ezell*, the Court of Appeals held that firing ranges are protected by the Second Amendment's implied right to acquire and maintain proficiency in the use of firearms. 651 F.3d at 704. The Seventh Circuit reasoned that without ranges, the right to bear arms would lose meaning absent "the training and practice that make it effective." *Id.* Here, in contrast to *Ezell*, silencers are sound suppressing firearm accessories and do not aid in acquiring or maintaining firearm proficiency.

Nothing suggests that the Supreme Court's holding in *Bruen* changes this analysis. Regulations of silencers pass constitutional scrutiny under the Second Amendment because silencers fall outside the Second Amendment's plain text. Therefore, the Government has passed *Bruen's* first step and "the analysis can stop there." *Bruen*, 142 S. Ct. at 2126 (quotation omitted). Cooperman's motion to dismiss his indictment for unlawfully possessing unregistered silencers under the Second Amendment is denied.

Constitutionality of Machinegun Regulations under the Second Amendment

Cooperman also mounts a facial challenge to 18 U.S.C. § 922(o), which prohibits possession of machineguns. Glock switches, also known as Glock conversion devices or auto sears, are

3

considered machineguns under federal statute because they are parts "designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

The Government contends that the text of the Second Amendment does not cover machineguns, as they are a type of dangerous and unusual weapon not in common use.[1] The *Heller* court recognized that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. Therefore, protections do not extend to the carrying of weapons not "in common use at the time" or those that "are highly unusual in society at large," such as machineguns. *Id.* at 627; *see also Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machine guns to be obviously valid."). *Bruen* remains consistent with this aspect of Second Amendment precedent. Justice Alito and Justice Kavanaugh's separate concurring opinions support the conclusion that the Court did not intend its holding to affect regulations on dangerous and unusual weapons. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing … about the kinds of weapons that people may possess."), and at 2162 (Kavanaugh, J., concurring) (recognizing that presumptively lawful regulations, such as prohibitions on dangerous and unusual weapons, are still constitutionally valid).[2]

Cooperman argues machineguns are not dangerous and unusual because they are in common use. (Dkt. 22, at 4.) In support, Cooperman cites to an ATF report stating that there are

---

[1] Cooperman does not dispute that the "common use" analysis falls under the first prong of the *Bruen* framework.

[2] After the parties fully briefed this motion (including multiple notices of additional authority from the Government and sur-replies from both sides), the Seventh Circuit decided *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023). In that case, the Court of Appeals vacated and remanded Judge Blakey's dismissal of the plaintiff's challenge to 18 U.S.C. § 922(g)(1), which bars possession of firearms by convicted felons. Judge Blakey decided the case before *Bruen* was decided, and so the Seventh Circuit remanded the case for "a more substantial historical analysis" consistent with *Bruen*. *Id.* at 1024. Relevant to this case, the Seventh Circuit stated that it could not decide the case on *Bruen's* first prong—whether the plain text of the Second Amendment covers felons—"without the benefit of more substantial briefing on remand." *Id.* at 1023. Here, the inquiry may stop at the plain text analysis because the Court has the benefit of the extensive briefing by both parties, which cites to the relevant case law on the issue.

741,146 total registered machineguns throughout the country. (*Id.*, at 3.) Possession of these machineguns is lawful pursuant to the "grandfather clause" in 18 U.S.C. § 922(o)(2)(B), which permits "possession of a machinegun that was lawfully possessed before [1986]." Courts have rejected similar arguments using these figures to show "common use." *See Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016) (holding that "[n]one [of the statistics presented] allow a conclusion that a machinegun is a usual weapon"). In *Hollis*, the Fifth Circuit noted that the Courts of Appeal have looked for numbers in the millions of weapons to establish common use. *Id.*; *see also United States v. Simien*, No. SA-22-CR-00379-JKP, 2023 WL 1980487, at *9 (W.D. Tex. Feb. 10, 2023) (holding that the same statistics Cooperman now cites are still "too insignificant for machineguns to be considered common use"). The Court also questions whether Cooperman's statistics capture the relevant timeframe for the "common use" analysis. *See Atkinson*, 70 F.4th at 1027 (Wood, J., dissenting) ("The Court's reference to historical tradition indicates that the relevant time for the 'common use' inquiry is when the Second Amendment was adopted, not when the current lawsuit arose."). Regardless, Cooperman's "common use" argument fails on either front.

For these reasons, the Court joins other courts in this district and elsewhere in holding that possessing machineguns is not conduct covered by the plain text of the Second Amendment as machineguns are dangerous and unusual weapons. *See, e.g., United States v. Dixon*, No. 22 CR 140, 2023 WL 2664076 (N.D. Ill. Mar. 28, 2023) (Kendall, J.); *Simien*, 2023 WL 1980487 (W.D. Tex. Feb. 10, 2023); *United States v. Hoover*, No. 3:21-cr-22(S3)-MMH-MCR, 2022 WL 10524008 (M.D. Fla. Oct. 18, 2022). Therefore, under the *Bruen* framework, the federal prohibition on possession of machineguns is constitutionally valid.

<u>Due Process Arguments</u>

Cooperman argues that his prosecution under 26 U.S.C. § 5861(d) for failure to register his silencer violates the Due Process Clause. He argues that the Government may not charge him with

5

failure to register a weapon that state and federal statutes prohibit him from possessing in the first place. Cooperman cites to *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992) in support of his argument, which held that the government's registration and taxing requirements (under Section 5861(d)) were rendered meaningless once the possession of silencers became illegal. His citation to this 10th Circuit precedent ignores binding Seventh Circuit precedent on the issue. *See United States v. Ross*, 9 F.3d 1182 (1993), *vacated on other grounds*, 511 U.S. 1124, *remanded to* 40 F.3d 144. *Ross* expressly rejected *Dalton's* holding and joined those circuits upholding the Government's decision to prosecute under either statue. *See, e.g., United States v. Jones*, 976 F.2d 176 (4th Cir. 1992), *cert. denied*, 508 U.S. 914, 113 S. Ct. 2351, 124 L. Ed. 2d 260 (1993). Thus, Cooperman's argument fails.

Finally, Cooperman contends that the "grandfather clause" in 18 U.S.C. § 922(o)(2)(B) violates the Due Process Clause because it is illogical, arbitrary, irrational, and unreasonable. He argues that "[i]f the purpose [of the statute] is to protect the public from dangerous machine guns, then all machine guns must be banned." Applying rational basis scrutiny, as Cooperman requests, the Court finds that there is a rational connection between the statute and a legitimate government interest. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303–05, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976) (discussing legitimate government interests in grandfather clauses). The Court is "guided by the familiar principles that a statute is not invalid under the Constitution because it might have gone farther than it did, that a legislature need not strike at all evils at the same time, and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Id.* at 305. Cooperman's motion to dismiss his indictment is denied.

IT IS SO ORDERED.

Date: July 26, 2023  Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

6